Claude HUCKLEBERRY, Appellant,

v.

IVERSON SUPPLY CO., Appellee.

No. 5328.

Court of Civil Appeals of Texas.

El Paso.

June 3, 1959.

Rehearing Denied July 1, 1959.

Edwards, Belk, Hunter & Kerr, El Paso, for appellant.

Kemp, Smith, Brown, Goggin & White and William Duncan, El Paso, for appellee.

FRASER, Justice.

This was a suit on sworn account brought by Iverson Supply Company, plaintiff, against Claude Huckleberry, defendant, to recover for bits furnished on a well drilled in New Mexico. The plaintiff contended that the San Juan Drilling Company had ordered the bits for the account of Huckleberry, and the defendant denied any such authority in San Juan Drilling Company, and inter-pled the San Juan Drilling Company as a party defendant. There was a written contract between the San Juan Drilling Company and Claude Huckleberry which was silent on the subject of bits, but in which San Juan Drilling Company agreed to drill the well for Huckleberry. The defendant Huckleberry contended that the contract was clear, unambiguous and controlling on the point. The San Juan Drilling Company contended that there was a custom in the oil field industry that bits were to be furnished by the one hiring the rig, and that this custom became a part of the contract.

Trial was before a jury, and the court submitted to the jury the question of whether or not the defendant, Claude Huckleberry, authorized the San Juan Drilling Company to order the bits from the plaintiff, Iverson Supply Company. The jury found against the defendant Huckleberry, and the defendant Huckleberry filed a motion for judgment non obstante veredicto, which was overruled, followed by a motion for a new trial, which was also denied, and this appeal results.

Appellant has briefed two points, the first of which, we think, must be granted, and controls the disposition of the lawsuit. This point was to the effect that the court erred in overruling defendant's motion for judgment non obstante veredicto.

The defendant Huckleberry had conversed with an official of the San Juan Drilling Company regarding the drilling of a wildcat oil well in New Mexico. Their agreement was apparently finalized in a letter from the San Juan Drilling Company to defendant Huckleberry, and all parties are agreed that such letter represents the contract between defendant and the drilling company. Because of the nature of this case, the letter is here reproduced and is as follows:

"Mr. Claude Huckleberry
"5032 Timberwolf
"El Paso, Texas.

"Dear Mr. Huckleberry:

"Re: Catron County, New Mexico Well.

"This will confirm our understanding that we are to perform certain drilling operations for you under the terms and conditions as set out in this letter.

"We are to drill a well for you to be located in the NE/4 of the NE/4 of Section 11, Township 2 North, Range 16 West, Catron County, New Mexico. This is located on Federal Lease New Mexico 023064 with forty acres dedicated to the well.

"We are to furnish our Rig No. 12 and crews.

"You are to furnish the roads and location, mud, water, fuel, all tangible well equipment if required, and all third party services and materials required for cementing, logging, shooting, fra-*cur*ing, acidizing, or any other completion or special procedures which may be required.

"You are to pay us six hundred dollars ($600.00) per 24 hour day for the use of the rig from the time crews are hired to rig up until the crews are dismissed after the rig is stacked.

"Operations are to be commenced as soon as possible.

"We will perform the work in a diligent and workmanlike manner until the operations have been completed or you have advised us to discontinue the work. It is recognized that we are independent contractors and this letter agreement is not to be construed as creating any other relationship between us.

"You will pay all costs of moving the rig and equipment from its present location in San Juan County, New Mexico, to the location where the well *is to be drilled; and all costs of moving* the rig and equipment back to our yard located near Aztec, New Mexico after the work is completed. It is also understood that you will pay the cost of moving any supplementary equipment which may be found to be needed while work is in progress from its present location to the well; and moving that equipment back to San Juan County, on completion of the work.

"Invoices will be rendered on the last day of November and on the fifteenth and last day of each succeeding month while the work is in progress; and it is understood that payment of the invoices will be made by the 10th of December in the case of the first invoice; the 25th of December for the invoice to be rendered on December 15th and on the 10th and 25th of each subsequent month for the invoices next preceding those dates. Interest will be charged at six per cent (6%) per annum on invoices not paid by the due date.

"If you find that this letter correctly sets *for* our agreement, please sign

in the space provided below for your acceptance and return one fully executed copy to us at your early convenience.

"Very truly yours,

"SAN JUAN DRILLING COMPANY

"ORIGINAL SIGNED BY:

"Neal Martin
"Vice President

"ACCEPTED: November 13, 1956
"ORIGINAL SIGNED BY:
"Claude Huckleberry."

The drilling company moved on to the site and began the drilling of the well, which apparently turned out to be a dry hole. In the type of operation herein involved, the drilling company apparently used a number of bits, which were leased from the manufacturer through local outlets such as the Iverson Supply Company. It appears that the bits in this type of operation are not purchased, but merely used and returned, as one witness stated—to be "resmelted."

■ As indicated above, this contract is silent on the matter of bits, but it does specify what Mr. Huckleberry was to provide. This letter was prepared by the drilling company itself, and therefore, under the rules of construction, would be construed most strictly against them, as the author of same. There was nothing said about bits in any of the conversations prior to the letter contract. Plaintiff, therefore, depended, among other things,—or rather, San Juan defended its position generally, on two grounds; claiming that Huckleberry, and not they, should be held liable for the rental of the bits. These two grounds were, first, that it was the custom in that industry and that part of the country, where a wildcat well is contemplated, that the operator furnish the bits, because the hazards of drilling in new territory are unknown to the driller or con-

tractor; and that, therefore, most of these contracts are what is described as "day work contracts", and the drilling company stoutly maintains that such a contract, by custom, includes the provision that the operator shall pay for the bits.

The second ground relied on by the drilling company was that defendant Huckleberry had authorized, by his own statement and that of his agents, the rental of these bits in his name.

■ With regard to the first proposition, we do not believe the parties here were able to prove that such custom was known to or contemplated by Mr. Huckleberry; and, such being the case, he would not be bound, we believe, by a custom about which he knew nothing, where there was a written contract purporting to cover the entire transaction.

■ With regard to the second proposition, all the record reveals that Mr. Huckleberry ever said or did was in a conversation with San Juan's tool pusher (Wood). Appellant said, upon being asked which supply store the bits should be charged through, that "it didn't make any difference" to him. We do not believe that statement strong enough to warrant the assumption that he thereby impliedly authorized the drilling company to rent bits and have the same charged to him. Appellee also relies, however, on the statements of two men who were watching the well and were authorized to represent Mr. Huckleberry's interests (it must be remembered that this was on a $600 day rental proposition). Appellee maintains that their statements while the well was being drilled, to the effect that some of the bits being pulled didn't look to have been used enough—and "we were wondering what the well was going to cost us"—such statements having been made to agents and employees of the drilling company, were sufficient to create the belief and impression that they knew that Huckleberry was supposed to and intended to, pay for the bits, as appellee maintains that oth-

erwise these men would have had no interest in the condition of the bits and the cost of same. Appellant's witnesses, of course, deny that they meant any such thing; that they were merely curious and did not intend to create any impression that Mr. Huckleberry, their employer and the man whom they were authorized to represent, ever intended to pay for the bits, or had any financial interest in them. The court and jury apparently believed these statements were sufficient to warrant the drilling company in believing that Huckleberry, by his own statement and that of his agents, was indicating and evidencing his understanding that he was to pay for the bits. We do not believe that this conclusion is warranted; first, because Huckleberry's statement is indecisive and almost innocuous, in that he said he didn't care where they got them. With regard to his two agents, their letters of authorization are in the Statement of Facts, and the letters to these two men, Charles V. Maynard and Keith O'Leary, are identical, stating as follows:

"November 15, 1956

"To Whom It May Concern:

"I hereby authorize Charles V. Maynard to buy and accept all supplies or materials during my absence, necessary as per drilling contract on oil and gas well on

"Section 11, Township 2 North, Range 16 West, Catron County, New Mexico.

"Mr. Maynard also has full authority to stop the drilling for any tests and make any other decision that is necessary in regard to drilling or testing.

"Very truly yours,

—————————

"Claude Huckleberry
"5032 Timberwolf Dr.,
"El Paso, Tex."

It is evident that these letters of authorization authorized the agents to accept supplies, material, etc., with this provision: "as per drilling contract", followed by the description of the location of the oil and gas well.

■■ We think it has long been established that an agent cannot bind his principal beyond the authority granted by his employer. Therefore, these two men were limited and controlled by the written authority granted them by defendant Huckleberry, which authority specifically states, "as per drilling contract." This contract, as pointed out, is silent on the matter of bits. Therefore, we do not believe that these men could have, even if they had so intended, bound defendant Huckleberry to pay for the bits by the representations and conversations had at any time with employees of the San Juan Drilling Company. It seems to us that this contract between defendant and San Juan controls the authority of these two men, by the direct statements so stating in their letters of agency and authority from Huckleberry. The contract was silent on the matter of bits. Therefore, we hold they had no authority to bind defendant Huckleberry to pay for something that was not mentioned in the contract, which specifically outlined Huckleberry's obligations.

■ This case was submitted to the jury on the issue of whether or not Claude Huckleberry, defendant, had authorized San Juan Drilling Company to order the bits for his account. We do not think the issue as submitted was sufficiently decisive to settle this controversy. It seems to us that there was a fact issue as to whether or not Huckleberry knew of this custom and, perhaps, other fact issues relating to the meaning of some of the terms of the contract and the question of whether or not it was ambiguous. In other words, the contract had to be construed and settled before the position of the parties could be determined. For these reasons, we shall remand this case, rather than render it. Further, we do not find any appreciable evidence that defendant Huckleberry, in any way, ratified the renting of the bits, as the work went on

under the orders of San Juan Drilling Company.

We think that the court erred, also, in excluding the testimony of witness Cheatham, as we believe the fact of his not having operated in New Mexico went to the credibility and usefulness of his testimony, rather than to its admissibility. Plaintiff and San Juan pled a *universal* custom. Therefore, we feel the trial court should have permitted the jury to hear this witness' testimony.

For the above reasons, the judgment of the trial court is reversed and the cause remanded.